# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1033V
Filed: November 8, 2017
Not to be Published.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| C.A., by her Parents and Natural Guardians, * <br> TERESA and DAVID AUDINO, * <br> * <br> Petitioners, * <br> * <br> v. * <br> * <br> SECRETARY OF HEALTH * <br> AND HUMAN SERVICES, * <br> * <br> Respondent. * <br> * | Human papillomavirus ("HPV") vaccine; dysautonomia; no proof of causation; petitioners cannot find an expert; dismiss |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>Clifford J. Shoemaker</u>, Vienna, VA, for petitioners.
<u>Colleen C. Hartley</u>, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION[1]

On August 1, 2017, petitioners filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that human papillomavirus ("HPV") vaccine that their daughter C.A. received on August 14, 2014 caused her dysautonomia whose onset was two days. Pet. at ¶¶ 6, 11.

C.A.'s medical records do not support petitioners' allegations that the start of whatever petitioners think she has was two days after her first HPV vaccination. Moreover, no medical doctor has diagnosed C.A. with dysautonomia. The only person who diagnosed C.A. with

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

dysautonomia was a chiropractor named George Michalopoulos who says he is a chiropractic neurologist but has never attained a medical degree. The undersigned will not accept a medical diagnosis from someone without a medical degree. In <u>Domeny v. Sec'y of HHS</u>, No. 94-1086V, 1999 WL 199059 (Fed. Cl. Spec. Mstr. March 15, 1999), <u>aff'd</u>, unpub. op. (Fed. Cl. May 25, 1999), <u>aff'd</u>, 232 F.3d 912 (Fed. Cir. 2000) (per curiam) (unpublished), the undersigned rejected petitioner's proffer of the testimony of a dentist who was willing to "diagnose" petitioner with a neuropathy.

On September 22, 2017, the undersigned issued an Order discussing the difficulties in this case.

On October 24, 2017, the undersigned held the first telephonic status conference in this case and discussed the September 22, 2017 Order. Petitioners' counsel said he would confer with petitioners.

On November 7, 2017, petitioners filed a Motion for Decision Dismissing Her [sic] Petition. Petitioners state that they "will be unable to prove that [they are] entitled to compensation in the Vaccine Program" and that "to proceed any further would be unreasonable." Pet'rs's Mot. at 1. Furthermore, they state that to proceed any further would waste the resources of the court, respondent, and the Vaccine Program. Id.

The undersigned **GRANTS** petitioners' Motion for Decision Dismissing Her [sic] Petition and **DISMISSES** this case.

## FACTS

### Medical Records

On August 14, 2014, C.A. received her first HPV vaccination during her annual medical examination. Med. recs. Ex. 9, at 2, 18.

On September 6, 2014, C.A. saw Dr. Jennifer Hunsader of Lossman Eye Care Associates for a comprehensive eye and vision examination because of C.A.'s complaint of blurred vision when looking at distant objects. Med. recs. Ex. 14, at 6. On visual examination, C.A. had nothing wrong except myopia (nearsightedness). Id. at 8. C.A. did not complain of any other symptoms. Id.

On April 7, 2015, C.A. went to the Emergency Department of Vail Valley Medical Center with her parents. Med. recs. Ex. 1, at 1. C.A. had a sore throat and cough. She complained of nasal congestion, sore throat, and nonproductive cough since the day before, and an intermittent mild headache. Her brother had a sore throat and nongroup A streptococcal pharyngitis. C.A. did not have chills, fever, or rigors. A complete review of C.A.'s systems was otherwise negative. C.A.'s parents **denied any past medical history**. Id. This is nearly eight months after C.A. received HPV vaccine. On physical examination, C.A. was diagnosed with a

viral illness but was otherwise normal. Id. at 19.

On July 3, 2015, C.A. saw her personal care physician Dr. Patricia C. Stec, complaining of falling and landing sideways and backward while playing basketball in the last week of May. Med. recs. Ex. 9, at 14. C.A. did not have pain at the time, but two weeks later, her tailbone started to bother her. Her pain increased with prolonged sitting and once in a while when she stood. She also had pain when swimming the backstroke, but not with any other swimming stroke. On physical examination, C.A. was **normal** except for tenderness over the sacrum and coccyx. Dr. Stec diagnosed C.A. with a contusion of the sacrum. Id.

On July 23, 2015, C.A. saw chiropractor Ira Chislof, telling him she had pain in her neck, shoulders, upper back and arms which started about a month previously, i.e., June 2015. Med. recs. Ex. 2, at 13. C.A. recalled falling and landing on her tailbone in May 2015. C.A. **appeared in good health and denied any previous illnesses**. This was 11 months after C.A. received HPV vaccine.

On August 28, 2015, C.A. returned for her annual examination with Dr. Stec and said that she had **no concerns** other than pain in the sacral area for two weeks until the pain stopped. Med. recs. Ex. 9, at 11. Dr. Stec performed a physical examination of C.A. and assessed it was **routine without any abnormalities**. Id. at 12. This is one year and two weeks after C.A. received HPV vaccine.

On September 22, 2015 (although the handwritten date could be August 22, 2015), C.A. saw chiropractor Daniel Mossell of Holistic Health Care, giving a history of feeling fatigued throughout the day with shortness of breath on slight exertion. Med. recs. Ex. 5, at 3. She had hot and cold episodes often throughout the day. C.A. said the onset of these symptoms was at least two to four months earlier, putting onset at the earliest May 2015, or nine months after HPV vaccination. C.A.'s mother stated that C.A. received HPV vaccine shortly before she had these symptoms, although the history of onset of two to four months earlier (May 2015) does not warrant that statement. Id.

On October 5, 2015, C.A.'s mother brought her to see Dr. Stec to have a postural blood pressure check to bring to a specialist to rule out postural orthostatic tachycardia syndrome ("POTS") related to HPV vaccination. Med. recs. Ex. 9, at 8. The history C.A.'s mother gave was that about a year previously (in October 2014, which would be two and one-half months after C.A. received HPV vaccine), C.A. had extreme fatigue. In June 2015, C.A. was seen for tailbone contusion and her tailbone still hurt (although on August 28, 2015, C.A. said that the tailbone hurt for two weeks and then the pain stopped). C.A. had extreme tiredness and was hot and cold. This occurred numerous times in a day. She also had muscle aches for several weeks and a headache that day plus dizziness, resulting in C.A.'s not going to school. C.A.'s mother thought HPV vaccine caused these symptoms. C.A. also had anxiety, mood swings, and forgetfulness. C.A.'s mother took C.A. to a chiropractor named Dan Mossell who thought she had some abnormalities in her thyroid and hypothalamus, but chiropractor Mossell did not do any blood work on C.A. The hot and cold symptoms started about four weeks earlier (which

3

would make onset in September 2015 or more than a year after C.A. received HPV vaccine) and she did not have hot and cold symptoms over the summer.  The extreme tiredness onset was about January 2015 (or about 4 and ½ months after receiving HPV vaccination).  C.A.'s mother said that C.A. had an appointment with cardiologist Barbara Deol at Lurie on January 14, 2016. Id.  Dr. Stec did a physical examination, which was normal.  Id. at 8-9.  Her diagnosis was tiredness.  On blood testing, C.A.'s BUN was low at 8 and her glucose was high at 105.  Id. at 9.

On October 21, 2015, C.A. saw chiropractor George Michalopoulos, who wrote she had dysautonomia after receiving Gardasil.  Med. recs. Ex. 11, at 80.  Chiropractor Michalopoulos diagnosed C.A. with dysautonomia and POTS after receiving Gardasil.  Id.

### Chiropractor George Michalopoulos

Chiropractor George Michalopoulos calls himself a functional neurologist in a website (www.addisonwellness.com/dr-george-michalopoulos-dc), but in his records he calls himself a chiropractic neurologist.  He is not a neurologist at all since he does not have a medical degree.  According to the addisonwellness.com website, he believes in restoring people's "optimal health" with brain-based rehabilitation using a neuroplasticity approach.   One of the devices the Illinois Neuro and Physical Rehabilitation (where chiropractor Michalopoulos works) uses is an Interactive Metronome "to promote synchronized timing in the brain."  This device is used for ADHD, apraxia/dyspraxia, autism spectrum disorders, brain injury, brain tumor, auditory processing disorder, cerebral palsy, dyslexia, limb amputation, learning disorder, sensory processing disorder, stuttering, and stroke in children, and ADHD, brain injury, brain tumor, limb amputation, multiple sclerosis, Parkinson's, stroke, and spinal cord injury in adults. www.addisonwellness.com/interactive-metronome.

### C.A.'s and Petitioner Teresa Audino's Affidavits

On September 21, 2017, petitioners filed C.A.'s and petitioner Teresa Audino's affidavits as exhibits 15 and 16, respectively.  Petitioners seem confused as to C.A.'s status.  C.A. is not a petitioner because she is a minor.  She is the vaccinee.  Petitioners are Teresa and David Audino.

C.A. gives a history in her affidavit that is not reflected in any contemporaneous medical record for the time period she claims she became ill.  Petitioner Teresa Audino also gives a history not reflected in any contemporaneous medical record for the time period petitioners claim C.A. became ill.

Well-established case law holds that information in contemporary medical records is more believable than that produced years later at trial.  United States v. United States Gypsum Co., 333 U.S. 364, 396 (1948); Burns v. Secretary, HHS, 3 F.3d 415 (Fed. Cir. 1993); Ware v. Secretary, HHS, 28 Fed. Cl. 716, 719 (1993); Estate of Arrowood v. Secretary, HHS, 28 Fed. Cl. 453 (1993); Murphy v. Secretary, HHS, 23 Cl. Ct. 726, 733 (1991), aff'd, 968 F.2d 1226 (Fed. Cir.), cert. denied sub nom. Murphy v. Sullivan, 113 S. Ct. 263 (1992); Montgomery Coca-Cola Bottling Co. v. United States, 615 F.2d 1318, 1328 (1980).  Contemporaneous medical records

are considered trustworthy because they contain information necessary to make diagnoses and determine appropriate treatment:

> Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

Cucuras v. Secretary, HHS, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Petitioners have a number of difficulties in this case: (1) the contemporaneous histories C.A. and her mother gave to doctors stated C.A. was fine during the very period of time C.A. and her mother now state she was ill; (2) a medical doctor has neither examined C.A. for dysautonomia or POTS nor diagnosed C.A. with dysautonomia or POTS; (3) C.A. and her mother prefer to rely on chiropractors for medical evaluation and treatment; and (4) chiropractor Michalopoulos, to whom petitioner Teresa Audino refers in exhibit 16, at 3, as "a world renown expert in this field," does not have the training and qualifications of a neurologist or cardiologist in order to examine, diagnose, and treat anyone with alleged POTS and/or dysautonomia.

## DISCUSSION

To satisfy their burden of proving causation in fact, petitioners must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of HHS, 418 F.3d 1274, 1278 (Fed. Cir. 2005). In Althen, the Federal Circuit quoted its opinion in Grant v. Secretary of Health and Human Services, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical sequence of cause of and effect showing that the vaccination was the reason for the injury [,]" the logical sequence being supported by a "reputable medical or scientific explanation[,]" i.e., "evidence in the form of scientific studies or expert medical testimony[.]"

418 F.3d at 1278.

Without more, "evidence showing an absence of other causes does not meet petitioner's affirmative duty to show actual or legal causation." Grant, 956 F.2d at 1149. Mere temporal association is not sufficient to prove causation in fact. Id. at 1148.

Petitioners must show not only that but for HPV vaccine, C.A. would not have had the

alleged dysautonomia, but also that HPV vaccine was a substantial factor in causing C.A.'s alleged dysautonomia.  Shyface v. Sec'y of HHS, 165 F.3d 1344, 1352 (Fed. Cir. 1999).  Petitioners have not proved that C.A. actually has dysautonomia.

The Vaccine Act, 42 U.S.C. § 300aa-13(a)(1), prohibits the undersigned from ruling for petitioners based solely on their allegations unsubstantiated by medical records or medical opinion.  The medical records do not support petitioners' allegations.  Petitioners have not filed a neurologist's expert opinion in support of their allegations.

Petitioners move for a dismissal of their petition.

The undersigned **GRANTS** petitioners' motion and **DISMISSES** this case.

## CONCLUSION

The petition is **DISMISSED**.  In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court is directed to enter judgment herewith.[2]


**IT IS SO ORDERED.**

Dated:  November 8, 2017                                         /s/ Laura D. Millman
                                                                                        Laura D. Millman
                                                                                        Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.